[L. A. No. 26728.   In Bank.   May 15, 1962.]

THE PEOPLE, Plaintiff and Appellant, v. JOSEPH O. BROCK et al., Defendants and Appellants.

Stanley Mosk, Attorney General, Edward M. Belasco and Lawrence E. Doxsee, Deputy Attorneys General, for Plaintiff and Appellant.

Young, Wooldridge & Paulden, Young, Wooldridge, Paulden & Self and Robert J. Self for Defendants and Appellants.

Boekel, Moran, Morris & Power and Emory L. Morris as Amici Curiae on behalf of Defendants and Appellants.

SCHAUER, J.—This action was brought by plaintiff, the People, to recover from defendants the sum of $3,221.61 for the care, support and maintenance of defendants' son at Atascadero State Hospital following a commitment in accordance with Penal Code section 1026.[1] The trial court determined defendants to be liable for the charges but financially unable to pay them, and gave judgment for defendants. Both parties appeal. We have concluded that defendants correctly contend that under statutory provisions hereinafter discussed no liability attached to them, and that the judgment should for that reason be affirmed.

Events leading up to the commitment were as follows: Defendants' son, Billy Floyd Brock, was charged with murder. He entered a plea of not guilty by reason of insanity, and his case was tried by the court sitting without a jury. The court found that the son was insane at the time the offense was committed, and made the following order:

"The Court having heretofore appointed . . . medical examiners to examine the defendant and report upon his present sanity, and the Court having considered said reports by stipulation of the defendant and the district attorney . . . and . . . having found the defendant to be insane at the time of the commission of the offense as charged;

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, that the defendant Billy Floyd Brock was insane at the time of the commission of the offense, that the criminal proceedings pend-

---

[1]Section 1026 of the Penal Code reads in relevant part: "[I]f the defendant pleads only not guilty by reason of insanity, then the question whether the defendant was sane or insane at the time the offense was committed shall be promptly tried. . . . If the verdict or finding be that the defendant was insane at the time the offense was committed, the court unless it shall appear to the court that the defendant has fully recovered his sanity shall direct that the defendant be confined in the state hospital for the criminal insane. . . . If, however, it shall appear to the court that the defendant has fully recovered his sanity such defendant shall be remanded to the custody of the sheriff until his sanity shall have been finally determined in the manner prescribed by law."

ing against said defendant be suspended until such time as the defendant is returned to this court for further proceedings, that the said Billy Floyd Brock be committed to the Department of Mental Hygiene for placement in a State Hospital;

"It Is Further Ordered that the defendant be restrained with the same degree of security as in effect at said State Hospital for the criminally insane as a person dangerous to be at large for the health and safety of others.

"It Is Further by the Court Ordered, that at such time, if ever, the defendant should be released from the State Hospital, he be returned to this court for further proceedings."

The above order was made in August 1958. Pursuant thereto Billy Floyd Brock was placed in Atascadero State Hospital. In March 1960 the People brought this action against defendants. The trial court found and concluded that "Billy Floyd Brock was an insane person at the time of the commission of the offense for which he was charged . . . [and] . . . was insane at the time of his commitment by the Superior Court on August 13, 1958, and has remained insane since that time," that defendants as his parents "became legally liable to plaintiff" under the provisions of section 6650[2] of the Welfare and Institutions Code for costs of his care and support in the state hospital, but are financially unable to pay "because of the limitation of their income and the amount of their living expenses." Judgment was thereupon entered for defendants and these appeals by both parties followed.

Defendants contend that the provisions of section 6650.5 of the Welfare and Institutions Code, added in 1957, (Stats. 1957, ch. 729, § 1), relieve them of liability for the involved charges. That section reads: "If in a criminal prosecution a defendant pleads not guilty by reason of insanity, and it is

---

[2]Section 6650, Welfare and Institutions Code, provides:

"The husband, wife, father, mother, or children of a mentally ill person or inebriate, the estates of such persons, and the guardian and administrator of the estate of such mentally ill person or inebriate, shall cause him to be properly and suitably cared for and maintained, and shall pay the costs and charges of his transportation to a state institution for the mentally ill or inebriates. The husband, wife, father, mother, or children of a mentally ill person or inebriate, and the administrators of their estates, and the estate of such mentally ill person or inebriate, shall be liable for his care, support, and maintenance in a state institution of which he is an inmate. The liability of such persons and estates shall be a joint and several liability, *and such liability shall exist whether the mentally ill person or inebriate has become an inmate of a state institution pursuant to the provisions of this code or pursuant to the provisions of Sections 1026, 1368, 1369, 1370, and 1372 of the Penal Code.*" (Italicized portion was added by amendment in 1945; Stats. 1945, ch. 247, § 1, p. 710.)

found that such person was insane at the time he committed the offense *but has recovered his sanity,* and he is committed to a state hospital *because of his insanity at the time of commission of the offense,* neither such person nor his estate nor his relatives shall be liable for such person's care, support or maintenance in such state hospital." (Italics added.)

More particularly, defendants urge that the language of the section, "but has recovered his sanity," was intended by the Legislature to refer to mental ability to stand trial and to understand the nature of the charges and present a defense, i.e., sanity within the purview of section 1368 of the Penal Code;[3] that inasmuch as the superior court *did* try their son on his plea of not guilty by reason of insanity the court clearly did not then doubt that he had recovered his sanity for purposes of Penal Code section 1368; and that consequently Welfare and Institutions Code section 6650.5 applies and excuses defendants from liability for his support while in the state hospital. This view appears meritorious.

■ It is of course undisputed that a trial upon a plea of not guilty by reason of insanity involves only the M'Naughton test, i.e., that a person is, in law, incapable of crime if "at the time the accused committed the act he was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of his act or, if he did know it, that he did not know that he was doing what was wrong." (*People* v. *Rittger* (1960) 54 Cal.2d 720, 731 [8] [7 Cal.Rptr. 901, 355 P.2d 645] ; *People* v. *Nash* (1959) 52 Cal.2d 36, 39, fn. 1 [338 P.2d 416].) This test considers the sanity of a defendant at the time the offense was committed.

■ However, under Penal Code section 1368 (fn. 3, *supra*) a defendant would not be tried on his plea of not guilty, or not guilty by reason of insanity, if at the *time of trial* there arises a doubt as to the defendant's *then* sanity. Thus, section 1368 sanity contemplates the defendant's mental status at the time of trial, and the criterion is not the M'Naughton test. Rather it is this: if he is able to understand

---

[3]Penal Code section 1368 provides: "If at any time during the pendency of an action and prior to judgment a doubt arises as to the sanity of the defendant, the court must order the question as to his sanity to be determined by a trial by the court without a jury, or with a jury, if a trial by jury is demanded; and, from the time of such order, all proceedings in the criminal prosecution shall be suspended until the question of the sanity of the defendant has been determined, and the trial jury in the criminal prosecution may be discharged, or retained, according to the discretion of the court until the determination of the issue of insanity."

the nature and purpose of the proceedings taken against him and to assist counsel in the conduct of a defense in a rational manner, he is sane within the meaning of section 1368. (*People* v. *Merkouris* (1959) 52 Cal.2d 672, 678 [3] [344 P.2d 1], and cases there cited.)

■ Inasmuch as defendants' son was tried on his plea of not guilty by reason of insanity the conclusion is impelled that there was no doubt in the mind of the court as to his ability to understand the nature of the proceedings against him and to assist in conducting his defense, and that he was thus possessed of section 1368 sanity. ■ However, the court's order in that proceeding, committing the son to a state hospital, also shows that he was found to have been insane under M'Naughton's rule (see Pen. Code, § 1026, fn. 1, *supra*) at the time of commission of the offense and that the same mental infirmity, although perhaps in a period of remission, continued until the time of trial.

It is our view that this situation falls within the language of section 6650.5 of the Welfare and Institutions Code relieving the relatives from support of one who pleads not guilty by reason of insanity, who has recovered his sanity (i.e., whose plea is tried, thus by necessary implication establishing sanity under Pen. Code, § 1368), who is found to have been insane (M'Naughton) at the time he committed the offense, and who is committed to a state hospital because of his *insanity at the time of the offense.* ■ The only "insanity at the time of commission of the offense" which could support the commitment to a state hospital contemplated by section 6650.5 is the M'Naughton type of insanity. Hence, these provisions lead logically to the conclusion, as indicated, that the phrase "has recovered his sanity" refers to Penal Code section 1368 sanity for purposes of trial of a defendant's plea. Further, this construction removes from the purview of Welfare and Institutions Code section 6650 (fn. 2, *supra*) any commitment to a state hospital for the insane made pursuant to section 1026 of the Penal Code (fn. 1, *supra*), i.e., commitment to such a hospital of a defendant found to have been insane at the time the offense was committed but who does not appear to the court to have fully recovered his sanity. Thus commitment under such circumstances (arising from a charge of crime, and for commission of an act which would be a crime except for the fact that the actor was laboring under M'Naughton test insanity) is placed on the same basis as the imprisonment of a defendant found guilty of crime,

insofar as concerns responsibility of relatives for his support in the state institution in which he is thereafter confined. This construction, we are convinced, gives logical effect to the intent of the Legislature in adopting section 6650.5.

A contrary construction would mean that section 6650.5 would appear to apply and to exclude responsible relatives from liability for the support in a state hospital of a defendant committed pursuant to Penal Code section 1026 only where (1) the defendant has feigned insanity and the relatives are not paying for the care of a truly insane person; (2) the defendant has been mistakenly committed as insane; (3) the defendant has regained his sanity while in the state hospital but his release has been delayed. We are persuaded that few, if any, of these situations would occur with any significant frequency, and that the suggested purpose to exclude relatives' responsibility only in such instances lacks substance and would have been specifically spelled out if the Legislature had intended the section to apply only under such exceptional circumstances.

Our announced conclusion renders unnecessary a discussion of other contentions urged by the parties or of those advanced by amici curiae, who note that the statutes contain no provisions for giving the relatives notice or an opportunity to be heard in a criminal case sanity hearing, and attack on that ground among others the constitutionality of imposing upon the relatives liability for the care of a defendant committed to a state hospital following such a hearing.

For the reasons above stated the conclusion of law numbered "V" as made by the trial court, declaring that "Under the provisions of Section 6650 of the Welfare and Institutions Code," defendants "as the parents of Billy Floyd Brock, became legally liable to plaintiff" for the charges here involved, is untenable and is to be deemed deleted. Contrary to such deleted conclusion, defendants have no legal liability to plaintiff for the charges here sought to be recovered.

The judgment of the trial court in favor of defendant parents is affirmed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.

The petition of plaintiff and appellant for a rehearing was denied June 13, 1962.