244 A.2d 833.
STATE *vs.* CHARLES E. COOK.

AUGUST 7, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J.  At the completion of a hearing held pursuant to G. L. 1956, §26-4-5, Charles Edward Cook was pronounced legally incompetent to stand trial on an indictment returned against him in 1959.  The presiding justice of the superior court entered a decision which denied the defendant's motion to assign a date on which he could be tried on the charges growing out of a homicide.  From this denial, the defendant has duly prosecuted a bill of exceptions in accordance with §9-24-17, as amended, by which he seeks to have the decision of the lower court reversed.

On October 7, 1959, in the early dawn, John J. Egan, a prominent Newport businessman, was found slain outside his home.  That same morning, his son-in-law, the present defendant, was arrested by police in connection with the homicide; that same afternoon, defendant was formally arraigned and charged with the murder in question.  In due course, the Newport grand jury returned an indictment against defendant charging him with the murder of Mr. Egan.  In the following January, 1960, defendant was given a psychiatric examiation, found to be incompetent to stand trial, and was ordered committed to the criminal insane ward of the Rhode Island Medical Center.  Three and one-half years later, defendant was certified fit for trial by the superintendent of the medical center, and transferred to the awaiting trial section of the adult correctional institutions.  On December 30, 1963, however, defendant's condition having regressed, he was ordered recommitted to the medical center until such time as doctors treating him could certify he was mentally qualified for trial.  For the next three years, defendant remained in the care of the medical center.  In the summer of 1966, on defense counsel's motion, a hearing was held on defendant's competency to proceed to trial, but the then presiding justice found him to be mentally unfit.  Some six months later, a new hearing was held on defendant's motion to assign the case for trial but

the objections of the attorney general were again sustained and defendant's motion was denied. Although defendant has only appealed from the decision rendered in the second hearing, a transcript of the first hearing by agreement of the parties was made part of the record in this case.

The single issue raised in the superior court was whether or not defendant had regained his mental competency to such a degree as to permit him to undergo a trial. In the absence of any applicable statute on the issue, the investigation of his present sanity and the form of such investigation are controlled by common law. *Cf. People* v. *Maynard,* 347 Ill. 422, 179 N.E.833; see also Annot. 142 A.L.R. 961, IV, at 964, and cases cited therein. From early times in England, it has been clear that persons who are found to be insane were never put on trial until their infirmity had dissipated. This humane view is so deeply embedded in our criminal jurisprudence that if a man is tried today while suffering from a decomposed mentality, it is regarded as violative of his constitutional rights of due process. See *Pate* v. *Robinson,* 383 U. S. 375, 86 S.Ct. 836, 15 L.Ed. 2d 815; *People* v. *Bender,* 20 Ill.2d 45, 169 N.E.2d 328. Unquestionably the mental competence of an accused must be regarded as an absolute basic condition of a fair trial.

With regard to a defendant's competency to be tried, it is important to recognize that there are variant shades and degrees of mental illness, not all of which prevent full criminal prosecution. The appellation of insanity, therefore, which encompasses the full spectrum of mental abnormalities, does not necessarily connote incompetency to stand trial. *State* v. *Page,* 104 R. I. 323, 244 A.2d 258. Thus, it has been held that while a man may be suffering from a mental malady which would warrant a finding of civil incompetence, he nonetheless could be deemed fit for trial on a criminal charge. *State* v. *Buchanan,* 94 Ariz. 100, 381 P.2d 954.

In evaluating a defendant's competency to stand trial the test to be applied is not the right and wrong M'Naghten Rule. *People* v. *Brock,* 57 Cal.2d 644, 21 Cal. Rptr. 560, 371 P.2d 296; *Thursby* v. *State,* Me., 223 A.2d 61; *Magenton* v. *State,* 76 S.D. 512, 81 N.W.2d 894. Mental fitness for trial is to be judged by an entirely different and distinct standard from the one employed in the determination of whether criminal responsibility will be attached to an accused for conduct deemed to be outside the law. *State* v. *Page, supra.*

To identify more clearly the elements of the test for competency to stand trial, it is helpful to acquaint oneself with the historical functions sought to be achieved by its application. The rule is said to protect the accused rather than the public, but it is applied even in cases where the defendant importunes the court for a trial. See *Commonwealth* v. *Ragone,* 317 Pa. 113, 176 A. 454. The true reason why a mentally disabled defendant should not be tried is said to be that his infirmity substantially prevents him from modeling a just defense to the claims brought against him, indeed if such a defense he has. At common law, therefore, if a man were shown to have lost his mental equilibrium, he was presumed to be incapable of putting forth a rational defense and moreover, with regard to punishment, he was reprieved for the reason that, to use Blackstone's phraseology, *"furiosus solo furore punitur"* (a lunatic is punished by his madness). 2 Sharswood's *Blackstone's Commentaries,* Book IV, chap. 31, p. 608.

Concern over providing humane treatment to an accused as well as preserving fundamental fairness and integrity, which should always be the hallmark of judicial administration in an ordered society, have prompted courts in this country to be increasingly scrupulous in shielding defendants with mental defects from being prosecuted. The mere thought of requiring a man to defend against criminal accu-

sations when he suffers from an impaired mental faculty, jars and disturbs our conscience and sense of civility. *Thursby* v. *State, supra.* To place a man who is mentally ill in court and require him to fend against the charges of one skilled in prosecution is the mind's equivalent to putting a man in a boxing ring who has his hands bound behind his back and require him to defend against the fistful onslaughts of one skilled in pugilistic battle. Both situations arouse within us deep revulsions.

For these reasons, therefore, the rule has developed that whenever a defendant's mental capacity is questioned, he is constitutionally entitled to a meaningful hearing designed to determine his fitness for trial. See *Pate* v. *Robinson, supra.* At this hearing, in order for a court to permit a defendant to be tried three things must be found: first, that defendant understands the nature of the charges brought against him; second, that defendant appreciates the purpose and object of the trial proceedings based thereon; and third, that defendant has the mental capacity to assist reasonably and rationally his counsel in preparing and putting forth a defense to the criminal charges of which he stands accused. *Cf. State* v. *Genereux,* 95 R. I. 292, 186 A.2d 738; *People* v. *Brock, supra; State* v. *Andrews,* 187 Kan. 458, 357 P.2d 739, *cert denied,* 368 U. S. 868, 82 S.Ct. 80, 7 L.Ed. 2d 65; *McWilliams* v. *Justice Court,* 5 Ariz. App. 200, 424 P.2d 848; 5 *Wharton's Criminal Law & Procedure,* §2020, p. 159. If the answer to all three of the preceding tests is affirmative, then the defendant is mentally capable for purposes of a trial and should be given a timely opportunity to proceed to a trial. When a trial justice in this state has presided over a hearing of this nature and rendered a decision on the defendant's fitness for trial in compliance with the relevant law on competency set out above, his decision is entitled to great weight and will not be disturbed by us unless it is shown that he clearly

abused his discretion in making his determination. *State* v. *Genereux, supra.*

In the instant case, defendant's competency to stand trial was the subject of two hearings almost six months apart. On both occasions, psychiatric experts testified at length and gave their professional conclusions as to defendant's state of mental health. A reading of both transcripts reveals that the doctors were sharply divided in their conclusions with regard to defendant's legal capacity to be tried. While we are deciding only the correctness of the decision rendered at the second hearing, we have in this opinion alluded to testimony given at both hearings.

Defense counsel argues in his brief and orally that the presiding justice should be reversed because he has misconceived the testimony of the experts and because he did not properly apply the common-law rule on competency. For reasons which follow, both arguments are unavailing to defendant here.

The presiding justice in his decision discussed in some detail the divergent opinions and testimony of all the expert witnesses. Some he believed more relevant and cogent than others. Although he does not say so expressly, it appears from his decision that the trial justice was markedly influenced by the testimony of both Dr. Herbert H. Myers and Dr. David J. Fish. He seems to be most persuaded by their conclusion that defendant, being a schizophrenic of a paranoid type, was seriously impeded in his thinking process, which in the opinion of both Dr. Myers and Dr. Fish would disqualify him from standing trial.

In his testimony, Dr. Myers observed that schizophrenic patients with paranoid tendencies are "very clever" in masking their delusions. Doctor Myers said that he entertained grave doubts that defendant, who earlier was plagued by hallucinatory conversations with mythical gods, could handle leading questions at a trial. The psychiatrist fur-

ther remarked that defendant's illness would cause his trial conferences with attorneys to be "* * * influenced by his own distorted thinking * * *."

Doctor Fish indicated an equally firm conviction that defendant's mental infirmity would presently disqualify him from trial. He premised his conclusion on the fact that defendant suffered from a "primary thought disturbance." Such a defect, he believed, would render defendant incapable of understanding the full implications of the trial or the charges brought against him.

It is true that other psychiatric physicians testified that defendant was, in their opinions, mentally competent for trial. But the trial justice was free to choose between expert opinions so long as he did so not from mere whim or fleeting caprice but with reasonable justification. In our view, the trial justice believed that defendant's malady prevented him from thinking with sufficient clarity and rationality as to enable him to obtain a fair trial. The trial justice obviously found Dr. Fish's and Dr. Myers' testimony more convincing than that of those experts who shared different opinions. The defense counsel has failed to show us in any way how this decision of the trial justice constituted a clear abuse of discretion, other than for the reason that he disagrees with their view of defendant's mental state.

Defense counsel further contends that the trial justice overlooked evidence which indicated that defendant could recall past events of his life with common lucidity and accuracy. Although the trial justice never alluded to this facet of the evidence, it is clear that such a capacity is not of controlling significance in proceedings of this nature. Beyond requiring defendant to be capable of recalling and relating past events, the common-law test of sanity for trial purposes requires him to be able to comprehend the significance of a trial and appreciate the relationship between

himself, the charges against him and the trial thereon. As the supreme court recently explained in *Dusky* v. *United States,* 362 U. S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824, it is not enough for the trial justice to find that the defendant is oriented to time and place with some recollection of events, but rather the " 'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' " Certainly no one could argue with much conviction that a man who fails to comprehend the true nature of criminal proceedings brought against him can be of much assistance to his counsel in their joint effort to forge a defense to the charges against him. Moreover, all the other constitutional privileges, such as the right to counsel, the right to confront opposing witnesses, the right not to testify and the right to a speedy trial, would indeed be hollow and worthless safeguards to one who did not possess sufficient mental aptitude to understand the nature of his trial or his relationship to it. See note, 81 Harv. L. R. 454, *Incompetency to Stand Trial.*

Our examination of both transcripts and the trial justice's decision in this case satisfies us that he understood and applied the correct principles of law in determining the present competency of the defendant to undergo a trial. Since the defendant has failed to persuade us that the trial justice clearly abused his discretion in making his findings, we are unwilling to disturb his decision.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for further proceedings.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Assistant Attorney General, for plaintiff.

*Aram A. Arabian, Corcoran, Peckham & Hayes, Edward B. Corcoran, Joseph T. Houlihan,* for defendant.