STATE of Rhode Island

v.

Brian D. DENNIS.

No. 2007–195–Appeal.

Supreme Court of Rhode Island.

Oct. 24, 2011.

**446**

Christopher R. Bush, Department of Attorney General, for State.

George J. West, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

### OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on September 27, 2011, on appeal by the defendant, Brian D. Dennis (defendant or Dennis), from a Superior Court order upholding a determination by the Sex Offender Board of Review (the board) classifying him as a Level III, high risk, sexual offender under G.L.1956 chapter 37.1 of title 11, the Sexual Offender Registration and Community Notification Act (the act).[1] According to the defendant, the objective risk assessment tools employed by the board indicated a classification of a moderate to moderate-low level, and not high-risk Level III. The defendant asserts that the lower court erred in ruling that external factors warranted a deviation between the risk level indicated by the risk assessment tools and the board's ultimate classification. He contends that the court erred in finding that the state established a *prima facie* case justifying the board's Level III classification. Additionally, for the first time in his Rule 12A statement to this Court, the defendant asserts that his right to procedural due process was violated because the Superior Court did not provide him with a "meaningful hearing" when reviewing his classification level. For the reasons set forth in this opinion, we affirm the order of the Superior Court.

### Facts and Travel

The defendant twice has been convicted of felony crimes involving sexual misconduct.[2] In 1998, he was convicted of second-degree child molestation, and sentenced to six years at the Adult Correctional Institutions (ACI), with six months to serve and the balance suspended, with probation. The second conviction stemmed from an incident that occurred in August 2000 and involved a violent attack on his ex-girlfriend. After trial, a jury found defendant guilty of one count

1. Several iterations of the act have occurred since its comprehensive amendment in 2003; however, the amendments do not substantively impact this case and we are therefore proceeding under the current version of the act.

2. In 1994, defendant also was convicted of breaking and entering, for which he received probation.

of first-degree sexual assault.[3] On appeal, this Court vacated the conviction and remanded the case for a new trial. *State v. Dennis*, 893 A.2d 250, 267 (R.I. 2006). On remand, defendant entered a plea of *nolo contendere* to a reduced charge of second-degree sexual assault, and was sentenced to twelve years imprisonment, with five years to serve and seven years suspended, with probation. He was released from prison in April 2006.

After this second conviction, defendant came before the board to undergo an assessment of the level of risk of re-offending that he posed to the community, in accordance with § 11-37.1-6. As part of the assessment process, the board conducted STATIC-99 and STABLE 2000 tests, which are recognized as validated risk assessment tools. The defendant scored a two on the STATIC-99 test, indicating a moderate-low risk of re-offending. The STABLE 2000 test rated defendant a six, placing him in the moderate range. In addition to these tests, the board, as directed by statute, considered "other available documentation" to reach its assessment, including defendant's "criminal record, police, institutional, probation/parole supervision, and treatment information." The board also considered several other characteristics in determining defendant's recidivism risk level. After reviewing the risk assessment test results and additional factors, the board concluded that the STATIC-99 score underrepresented the risk in plaintiff's case. The board recommended that he be classified as an overall risk Level III.

The defendant timely objected to the Level III classification and requested a hearing to review the classification under § 11-37.1-14. Counsel was appointed. The record discloses that at the pretrial conference, the parties agreed to continue the matter for oral argument. Before the hearing, written memoranda were filed and on March 27, 2007, oral argument was made before a Superior Court magistrate. Neither party sought to examine defendant, nor present any witnesses or other evidence. Indeed, the state suggested that defendant should testify at the hearing to respond to the magistrate's inquiries; however, defendant's attorney instead relayed the requested information from her client. At no other point during the hearing did either party seek to call witnesses, nor did Dennis raise an objection to proceeding without calling witnesses.

Before the magistrate, defendant's attorney asked to make a "few brief comments" and to submit a "couple of additional items" for the court's consideration. Recognizing that both sexual assault incidents involved alcohol and that the board considered alcohol use as a recidivism factor, defendant's attorney submitted a schedule of Alcoholics Anonymous (AA) meetings to demonstrate defendant's participation in alcohol counseling since his release from the ACI. Counsel also submitted documentation verifying defendant's full-time employment. Additionally, counsel argued that the board chose to ignore the results of the objective risk assessment tools in order to categorize defendant as a high-level risk recidivist. Counsel asserted that these scores—the STATIC-99 rated defendant at two and the STABLE 2000 at six—indicated that defendant had a moderate or moderate-low risk of re-offending and that the external factors relied upon by the board were

---

**3.** The defendant was found not guilty of a second count of first-degree sexual assault and kidnapping.

"pretty specious." The defendant contended that the case should be remanded to the board with directions to reclassify defendant at a lower risk level.

The state argued that, according to the STATIC–99, the board is not required to rely solely on the risk assessment tools for classification, but that the board may consider additional factors in reaching its decision.[4]

On May 8, 2007, in a bench decision, the Superior Court magistrate affirmed the board's classification of defendant as a risk Level III offender. In his decision, the magistrate noted that § 11–37.1–16 sets forth the burden of proof and the elements required for a *prima facie* case in determining whether the board's classification was justified. The magistrate deemed the STATIC–99 a valid risk assessment tool, and he highlighted the various factors that the board considered in defendant's case. The magistrate also indicated that according to the risk assessment report, defendant's risk to reoffend "could be higher or lower than the STATIC–99, according to the risk factors not measured by this instrument." In classifying defendant at Level III, the board also considered the nature of the offense, the use of force beyond that necessary to commit the offense, persistent restraint against the victim's resistance, multiple acts against the victim in a single situation, a record demonstrating aggressive sexual behavior, the number of crimes, the nature and length of defendant's criminal record, avoidance of sex-offender specific treatment while incarcerated, current access to victims, and

substance abuse with no documentation of treatment.

The magistrate found that the state established a *prima facie* case based on the validated risk assessment tools and, further, that reasonable means were used to collect the information employed in the risk assessment tools. The magistrate also found that defendant was afforded an opportunity to be heard in his effort to persuade the court that the board's classification and manner of notification were not in compliance with the statute.

The reviewing magistrate reasoned that defendant acknowledged his alcohol problem, but observed that over a period of eight years, until he was released from prison the second time, defendant failed to adequately address that problem. Additionally, the magistrate noted that, although defendant was attending AA, he never sought to enroll in any sexual offender counseling after the second conviction. Further, defendant's two prior convictions for second-degree sexual assault indicated he was a recidivist sexual assailant. The magistrate found that defendant continuously minimized his sexual misconduct and that he denied committing the offense in the 2006 conviction despite his *nolo contendere* plea. Having carefully considered the evidence, written memoranda, and arguments of counsel, the magistrate was not persuaded that the level of classification was unjustified. In accordance with § 11–37.1–16(c), the magistrate affirmed the board's classification of defendant as a risk Level III sex offender. The defendant appealed.[5]

---

4. The state also asserted that the underlying purpose of the statute supports use of external factors because the board itself is composed of members with a variety of expertise.

5. We note that an unnecessarily long period of time has elapsed between the date this

appeal was docketed in the Supreme Court and oral argument. The defendant's appeal was docketed on June 11, 2007. More than four years elapsed before this case was heard. No satisfactory explanation has been provided to justify the delay.

## I

### *Prima Facie* Case

■ Before this Court, Dennis maintains that the Superior Court magistrate erred by finding that the state established a *prima facie* case justifying the board's decision to classify him as a Level III sex offender. In any proceeding under the act, the state bears the initial burden of establishing a *prima facie* case. Section 11–37.1–16(a). Section 11–37.1–16(b) defines "prima facie case" as proof that

"(1) A validated risk assessment tool has been used to determine the risk of re-offense; [and]

"(2) Reasonable means have been used to collect the information used in the validated assessment tool."

The defendant argues that the board failed to confine its assessment to the validated risk assessment tools in making its classification. The state introduced the STATIC–99 and STABLE 2000 test results as validated risk assessment tools used to predict defendant's risk of re-offense. The defendant concedes that these tests are "nationally recognized, well-established risk assessment tools." The magistrate accepted the tests as validated risk assessment tools. We agree that the state satisfied the first prong of its *prima facie* case justifying defendant's Level III categorization. The defendant has not alleged that the state failed to satisfy the second prong of the statute—that the board used reasonable means "to collect the information used in the validated assessment tool."

## II

### Procedural Due Process

■ The defendant alleges a violation of his procedural due process rights under the state and federal constitutions because the Superior Court did not hold a meaningful hearing to review his classification.

This Court "uses the 'greatest possible caution' when reviewing a constitutional challenge to a statute." *State v. Faria,* 947 A.2d 863, 867 (R.I.2008).

The defendant argues that this Court's holding in *State v. Germane,* 971 A.2d 555, 578 (R.I.2009), requires that procedural due process rights be afforded to persons subject to the act. In *Germane,* this Court held that the Sexual Offender Registration and Community Notification Act "burdens a protectable liberty interest" and implicates procedural due process rights under the state and federal constitutions. *Id.* Section 11–37.1–15(a)(2), allows the Superior Court to "[d]etermine whether and to what extent the production of witnesses and cross examination shall be required or permitted depending on the complexities of the matter involved, the extent of doubt concerning the correctness of the level, nature and extent of the notification proposed * * *." In *Germane,* this Court also emphasized that "*all* sexual offenders who opt to appeal their risk level classifications as determined by the board of review must be afforded an opportunity to be heard before the Superior Court * * *." *Germane,* 971 A.2d at 580. Upon review of the record in *Germane,* we concluded that the defendant had been accorded adequate procedural due process in Superior Court because he testified, called witnesses to the stand, and submitted various exhibits. *Id.* at 571–72, 579.

■ In this case, we note that defendant failed to raise the issue of procedural due process before the Superior Court or in his original statement of the case to this Court. "It is well settled that a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court." *State v. Bido,* 941 A.2d 822, 828–29 (R.I.2008). However, we recognize a narrow exception to the raise-or-waive rule when an alleged error impli-

cates an issue of a constitutional nature and is "derived from a novel rule of law that could not reasonably have been known to counsel at the time of trial." *State v. Bouffard*, 945 A.2d 305, 311, 312 (R.I.2008). Although we remain unconvinced that the right to procedural due process in the Superior Court amounts to a novel rule of constitutional law, and although we are also mindful that this case was pending long before the issuance of our decision in *Germane*, we shall nonetheless address defendant's claims.

The defendant seeks to distinguish his case from *Germane* by arguing that he was not afforded the opportunity to present evidence in a meaningful hearing. We disagree. In *Germane*, we concluded that the defendant was provided with a meaningful hearing because there was a full evidentiary hearing before the Superior Court. *Germane*, 971 A.2d at 579. The record before us discloses that in Superior Court defendant agreed to proceed on the basis of written memoranda and oral argument. The defendant's attorney raised no objection to the scope of the hearing, nor did she inform the magistrate that she intended to call any witnesses to the stand. When the attorney for the state suggested that defendant testify, defendant's counsel demurred and relayed information from defendant directly to the magistrate. Although no witnesses were presented at the hearing, we are satisfied that defendant was not denied the opportunity to do so. The Superior Court magistrate considered all written memoranda and exhibits submitted prior to the hearing, and both attorneys were granted the opportunity to develop their arguments and present further evidence at the hearing. Before this Court, defendant failed to point to any evidence or mitigating factors that he would offer at an evidentiary hearing. We therefore are satisfied that defendant was afforded a meaningful hearing and has

failed to demonstrate that his right to procedural due process was violated.

## III

### Findings of Fact in a Nonjury Civil Proceeding

 The defendant argues that the Superior Court magistrate erred when ruling that external factors warranted a deviation between the risk level indicated by the objective tests and the board's ultimate finding. "This Court consistently has held that factual findings of a trial justice sitting without a jury are granted an extremely deferential standard of review." *State v. Gianquitti*, 22 A.3d 1161, 1165 (R.I.2011). "We shall not disturb the findings of the trial justice unless it is established that he or she misconceived or overlooked relevant and material evidence or was otherwise clearly wrong." *Id.* (quoting *State v. Fuller–Balletta*, 996 A.2d 133, 140 (R.I.2010)). "Obviously, we employ a *de novo* standard of review to the trial justice's conclusions of law." *Id.* (citing *Waterman v. Caprio*, 983 A.2d 841, 844 (R.I.2009)). If "the record indicates that competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for [the trial justice's] even though a contrary conclusion could have been reached." *Tim Hennigan Co. v. Anthony A. Nunes, Inc.*, 437 A.2d 1355, 1357 (R.I.1981).

Before the magistrate, Dennis argued that the board ignored the results of the objective tests and "[flew] in the face of the objective tests that they're purporting to use * * * " and that the external factors supporting the deviation were "pretty specious." Even under the heightened standards of *Germane*, we indicated that "[r]isk assessment is not an exact science, and a certain amount of judgment and even intuition must be exercised by both

the board of review and the reviewing magistrate." *Germane,* 971 A.2d at 589.

The Sexual Offender Community Notification Guidelines set forth various "Assessment Factors" to be employed by the board where applicable. The guidelines also advise that each assessment is to be conducted on a case-by-case basis, providing that "[e]ach risk of re-offense assessment decision shall be made on the basis of the facts of each individual case, after review of appropriate documentation." In addition, the board's conclusions indicate that the STATIC–99 test includes various components, and that the estimated results are group estimates that "do not directly correspond to the recidivism risk of an individual offender. [That] risk may be higher or lower than the probabilities estimated in the STATIC–99 depending on other risk factors not measured by this instrument." One factor listed under the Sex Offender Risk of Re–Offense Assessment Factors is "Actuarial Risk" that includes, but is not limited to, the STATIC–99 and the STABLE 2000. Section 11–37.1–6(2)(i) also provides in pertinent part that the board:

> "within thirty (30) days of a referral of a person shall conduct the validated risk assessment, review *other material* provided by the agency having supervisory responsibility and assign a risk of re-offense level to the offender. In addition, the board may find that, based on the assessment score and *other material,* that the person may possess a mental abnormality or personality disorder that makes the person likely to engage in sexually violent predatory offenses." (Emphasis added.)

Thus, the duties of the board include using a validated risk assessment instrument and other material to determine the level of risk the offender poses to the community. *See* § 11–37.1–6(1)(b). Additionally, § 11–37.1–6(4) explains that the board:

> "shall have access to all relevant records and information in the possession of any state official or agency having a duty under §§ 11–37.1–5(a)(1) through (6), relating to the juvenile and adult offenders under review by the board, including, but not limited to, police reports; prosecutor's statements of probable cause, presentence investigations and reports, complete judgments and sentences, current classification referrals, juvenile and adult criminal history records, violation and disciplinary reports, all psychological evaluations and psychiatric evaluations, psychiatric hospital records, sex offender evaluations and treatment reports, substance abuse evaluations and treatment reports to the extent allowed by federal law."

This statutory language, paired with the guidelines, suggests that a sexual offender assessment should not take place in a vacuum or solely rest on the results of the risk assessment tools. The classification of an individual's future risk of sexual recidivism is not a one-size-fits-all application. Although the board may not have evaluated every one of the fifteen Sex Offender Risk of Re–Offense Assessment Factors, it thoroughly considered many of the factors in combination with the validated risk assessment tools. The board also used the scores of two separate nationally recognized validated risk assessment tools. The board listed the additional external factors that elevated defendant from a moderate to moderate-low risk category to a high-risk Level III.[6] The reviewing mag-

---

6. The board considered the STATIC–99 score, as well as other available documentation, including criminal record, police reports, and treatment information. The board also listed a number of characteristics it considered in Dennis' particular case, and dynamic risk fac-

istrate found that the evidence presented was sufficient to support the board's classification based on the pairing of objective risk assessment tool results and external factors.

In *Germane,* 971 A.2d at 572, this Court upheld the magistrate's decision affirming the board's classification and his finding that the additional factors used by the board properly were utilized to make its determination. In this case, the record and related statutes reveal that the board is entitled to utilize additional materials and documentation to conduct its risk assessment in order to adequately determine an individual's risk to the community. Although it appears that the board did make some rather conclusory findings, it nevertheless properly relied upon a range of materials to formulate its decision. Addi-

tionally, it is not this Court's function to review the board's decision. The role of this Court is to review the Superior Court magistrate's decision. The magistrate found that competent evidence existed to support the board's assessment, and upheld it. Thus, we see no reason to disturb his findings.

### Conclusion

For the reasons set forth in this opinion, the order of the Superior Court magistrate is affirmed.

tors included in the STABLE 2000 risk assess-

ment tool.