June 1, 2026

**Supreme Court**

No. 2024-23-Appeal.
(NJ 22-4866)
No. 2024-24-Appeal.
(NJ 23-288)

In re E.G.S.                               :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2024-23-Appeal.
(NJ 22-4866)
No. 2024-24-Appeal.
(NJ 23-288)

In re E.G.S.                              :

Present: Suttell, C.J., Robinson, and Long, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** In these consolidated matters, the juvenile respondent, E.G.S., appeals from two Family Court orders finding him to be delinquent on two counts of first-degree child molestation in violation of G.L. 1956 § 11-37-8.1. The trial justice imposed on each count a suspended sentence to the Rhode Island Training School for Youth until the respondent's nineteenth birthday, with probation. Additionally, he was ordered to register as a sex offender for a period of fifteen years. On appeal, the respondent argues that the Family Court justice erred (1) in finding him competent to stand trial and (2) in ordering him to register as a sex offender for fifteen years. For the reasons set forth herein, we affirm the orders of the Family Court.

- 1 -

## Facts and Travel

Two delinquency petitions were filed in Newport County Family Court asserting that respondent had committed first-degree child molestation in violation of § 11-37-8.1.

### Competency Hearing

Before the trial commenced, a hearing was held over two days before the trial justice, regarding respondent's competency to stand trial. The respondent called two witnesses at that hearing. The respondent first called Miguel Nuez, Ph.D., "a postdoctoral fellow at the Adolescent Forensic and Addiction Psychology program at the Upper Medical School of Brown University" who was in placement "at [the] Rhode Island Family Court in the mental health clinic." Doctor Nuñez was qualified as an expert in the field of forensic psychology and forensic mental health. The respondent then called Kathleen Kemp, Ph.D., the director of the Family Court Mental Health Clinic, where she "conduct[s] forensic mental health evaluations" and "provide[s] supervision * * * for the psychology intern and postdoctoral fellow." Doctor Kemp was qualified as an expert in the area of forensic psychology and juvenile competency. A thirteen-page competency evaluation report (the report) drafted by Dr. Nuñez and Dr. Kemp was admitted into evidence. The report

described respondent's history, mental status, and the doctors' observations, as well as the screening measure used in the evaluation.

In May 2023, Dr. Nuñez met with respondent twice, which he testified is typical when conducting evaluations for competency. He explained that the first meeting is to "gauge their understanding and appreciation, decision-making, [and] ability to assist counsel * * *." If the juvenile "show[s] limited knowledge in any of these domains, [the interviewer] provide[s] them with teaching" in an attempt to "fill in their gap of knowledge." He then explained that the primary purpose of the second meeting is to "gauge whether that information was learned and retained and can be recalled."

Doctor Nuñez also testified that, as part of initial interviews, practitioners "gather background information from the youth * * * [which] can include things like family history, the developmental history, mental health history, medical history, educational history, sex or social history." He stated that they "also conduct a mental health status examination, including an evaluation of the mental health symptoms at the time of the interview" and then "do the competency evaluation questions," which are utilized "with the juvenile during the competency interview * * *." Doctor Nuñez testified that he reviewed case documents—which included a risk assessment conducted by social worker Robert Grant—and school records. He also indicated

that additional records from the hospital were requested but had not been received before he wrote the report.

Doctor Kemp testified that, when assessing competency, practitioners look at the individual's (1) "factual understanding," (2) "rational understanding or appreciation," (3) "ability to assist counsel," and (4) "decision-making abilities." According to the report, Dr. Nuñez and Dr. Kemp were of the opinion that respondent "did not sufficiently have initial, or showed improvements in factual understanding, rational appreciation, or adequate decision-making abilities." Specifically, Dr. Nuñez testified that respondent had "limited knowledge" in "his understanding of sex offender registration," "the role of the prosecutor[,]" and "limited understanding of plea bargains." He stated that respondent's understanding of sex offender registration was "that it could limit his ability to work at certain places," and he added that respondent initially said the prosecutor "would be likely to be on his side," but then later said "the prosecutor would be [on] either side." Although Dr. Nuñez provided teaching on the sex offender registration, respondent was not "able to retain that information." He also educated respondent on the role of the prosecutor, which he confirmed "did not assist [respondent's] understanding * * *." Doctor Nuñez stated that, after being taught what a plea deal was, respondent stated his belief that the court "wanted to find him guilty" and that "he would have to plead guilty in order to stay here."

On cross-examination, Dr. Nuñez agreed that he was unaware of any prior mental health diagnoses for respondent and that he was unaware of any prior psychiatric hospitalizations, mental health treatment, or self-harming behavior. He further stated that, although respondent understood some repercussions of the process, it was not "sufficient" for him to be deemed competent, adding that respondent had an incomplete understanding of plea bargains and the role of the prosecutor. He acknowledged that adjudicative competence did not require perfect knowledge; however, he denied that respondent had a capacity to learn and understand the proceedings and apply them to his case.

## Competency Decision

The trial justice heard arguments from the parties on September 13, 2023, and rendered a bench decision on October 11, 2023, finding that respondent had not met his burden of proving "by a preponderance of the evidence that he is not competent to stand trial pursuant to [G.L. 1956 §] 40.1-5.3-3."

The trial justice began her decision by reviewing the procedural history of the case and the testimony of Dr. Nuñez and Dr. Kemp. She stated that she had reviewed the petitions, the report, and the standard for competency to stand trial as provided in § 40.1-5.3-3, stating that "[a] person is mentally competent to stand trial if he or she is able to understand the character and consequences of the proceedings against him or her and is able to properly assist in his or her defense." She found that "the

- 5 -

testimony given and the reports submitted" did not "show by a preponderance of the evidence that respondent was able to overcome th[e] presumption of competency." The trial justice concluded that, "based on the answers given by the respondent to the questions asked," respondent's answers "were sufficient." She observed that respondent "answered questions and gave definitions or explanations and did understand the character and consequences of the proceeding against him, albeit not perfect but sufficient," and "showed that he was able to properly assist in his defense." The trial justice noted that it was "clear that the doctors didn't ask or teach" about certain things that she thought "should have been asked" when "looking for a general understanding of what the respondent knows," giving examples such as "probation or a suspended sentence, two things that are clearly potential consequences of either a plea or a finding of then competency."

The trial justice stated that she had reviewed some caselaw on competency and the historical information utilized by Dr. Nuñez and Dr. Kemp and found that it was uncontradicted that respondent had "no medical, mental health or physical issues." She further found that respondent had "no mental health diagnosis, no cognitive impairment," and had not "ever been on any psychotropic medication." She highlighted that respondent was employed, participated in immigration court, had followed all the special conditions imposed on him by the Family Court, and

had "attended public school [in the United States] until his withdrawal in December of 2022."

The trial justice stated that, while "reviewing the answers this respondent gave to the questions about a trial, plea bargains, prosecutors, defense attorneys, judges," she "would certainly not expect a juvenile or even a young adult to recite answers some law students wouldn't be able to give in a much less stressful setting." She indicated that she disagreed "on many points" with what the doctors "found sufficient and what they found lacking * * *." The trial justice determined that, although respondent's answers "were not perfect or all inclusive[,]" that did not mean that he "was not competent to stand trial." She stated that she was "satisfied that the respondent sufficiently understands the four domains of competency" in that he understood the legal process and appreciated how it applied to his case, had the ability to communicate with counsel, and had "the capacity to make rational decisions."

The trial justice stated that respondent's answers, along with the testimony and evidence adduced at the hearing, revealed that respondent sufficiently understood "the character and consequences of the proceedings against him" and was "able to properly assist in his defense." She ultimately concluded that respondent had failed to meet his burden, and she found that he was competent to stand trial. An order to that effect entered on October 11, 2023.

**Trial**

A trial was held over two days in October 2023. The state first called the complainant, who testified that she was fourteen years old at the time of trial. The complainant testified that, in October 2021, she was in a relationship with respondent and that the two began dating when she was twelve years old and in fifth grade. She testified that they had sex and that respondent put his penis in her vagina; she could not recall how many times they had sex but confirmed that it happened on more than one occasion. She recalled that she went to the hospital after her mother realized she was pregnant. She stated that she had had sex with respondent between October 2021 and August 2022.

On cross-examination, the complainant testified that respondent and she were friends before they became boyfriend and girlfriend and that they got along. She further testified that respondent would come to her house after work, usually around 10:15 p.m., and they would have sex in the living room. The complainant acknowledged that, "at one point," she was in love with respondent and that the relationship was consensual. She confirmed that respondent never hit her, used a weapon against her, physically fought with her, or threatened to hurt her.

The state also called Jennifer Dellefratte, a patrol officer with the Middletown Police Department, who testified to her involvement in the case. She stated that she had conducted an interview with respondent at the Newport police station on

December 13, 2022, during which respondent admitted that he had intercourse with the complainant when she was twelve years old.

**Decision and Sentencing**

The trial justice rendered a bench decision on November 1, 2023, finding "beyond a reasonable doubt that this respondent * * * [did] engage in sexual penetration, to wit, peni[le] vaginal intercourse with a person 14 years of age or under in violation of [§] 11-37-8.1." She further found respondent delinquent on both petitions. She sentenced respondent to the training school until his nineteenth birthday on each petition, said sentences to be suspended, with probation.

At a continued sentencing hearing, Robert Grant, a licensed clinical social worker, was qualified as an expert on juvenile sexual offenses. He stated that he met with respondent twice and conducted a juvenile sex offender evaluation on him. He testified that respondent was "cooperative" and "presented as low intelligence and fairly naive." He described some of the tools that he used to evaluate respondent and concluded that "there was very little or no evidence of his psychopathy," which he explained meant "sociopathic, criminal mindset, self-centered, abusive, taking advantage of others, manipulative."

Mr. Grant identified the risk assessment he conducted on respondent, and it was introduced as a full exhibit. He stated that his recommendation as to rehabilitation was that respondent "be compliant with all rules and stipulations put

- 9 -

forth by the DCYF or probation[,] * * * that he continue his education, that he continue work, and that he engage in therapy to address healthy sexual relationships, boundaries, [and] victim dynamics." He further opined that respondent should not have to register as a sex offender, based on his conclusion that he was "an individual that committed [a] sexual offense, that appeared to be more of a legal issue than sexual offending or predatory." The trial justice then questioned Mr. Grant as to whether he had "read the transcript from the trial[,]" which he had not; Mr. Grant explained that he utilized the police report with the complainant's statement and his interview with respondent. He opined that respondent was "not a predatory sexual offender," and that, in his "clinical opinion, [respondent] did not know" that what he did "was against the law."

The trial justice thereafter rendered a bench decision on the issue of sex offender registration, specifically G.L. 1956 § 11-37.1-4(j). She reviewed the procedural history of the case and Mr. Grant's testimony, stating that the information that he "relied on was woefully inadequate to provide an expert opinion to the [c]ourt." She stated that it was "clear from reading the report and hearing the testimony that this witness got all of his information from the respondent himself and took it as truthful." She identified and clarified inaccuracies in his report: respondent was charged with two counts, not one, and the complainant was twelve, not thirteen, at the time of the molestation. She also indicated that she found it

"unbelievable and quite disturbing" that Mr. Grant stated that "his opinion would not have changed based on the number of petitions that were brought against the respondent and the finding of delinquency beyond a reasonable doubt as to both petitions." She further stated that "[Mr. Grant] also had no information regarding the facts surrounding the sexual assault that came out at trial, that the sex occurred late at night, under the cover of darkness, with no adults around, on the couch in the living room of the victim's home, or outside on the lawn."

The trial justice rejected respondent's theory that "this was a Romeo and Juliet scenario," stating that "[t]hey were not star-crossed lovers where the only crime was their age. This is a 17-year-old male who was having sex with a 12-year-old fifth grade girl." She opined that the actions were "criminal and predatory on the part of the respondent." She found that the complainant's "testimony was clear that there were no dates, no gifts, no candlelight, no cards, no dinners, absolutely nothing provided in testimony or evidence leads this [c]ourt to consider this criminal not only because of the age of the parties but more accurately because of their ages and this respondent's actions." The trial justice then stated that she "consider[ed] all of the factors and * * * the totality of the circumstances" pursuant to § 11-37.1-4(j) finding that "respondent's action[s] were criminal and not romantic." She found that respondent was "a predator" and "a danger to the community," and she ordered him "to register as a sex offender on each petition and each finding of delinquency

pursuant to the applicable statute for the next 15 years, upon completion of the sentences imposed * * *."

## II

## Discussion

The respondent makes two arguments on appeal. First, respondent submits that the trial justice erred in finding him competent to stand trial. Second, respondent contends that the trial justice erred in ordering him to register as a sex offender for fifteen years.

## Competency

Turning to the first issue, respondent argues that the trial justice abused her discretion in finding respondent competent to stand trial. Specifically, respondent avers that he had rebutted the presumption of competency by a preponderance of the evidence and that the trial justice ignored the uncontroverted expert evidence provided and "failed to articulate a reasonable basis for" doing so. The respondent further submits the trial justice relied on irrelevant facts in her ruling.

The state argues that "the trial justice's reasoning was far from arbitrary and capricious, and her competency decision was not an abuse of discretion." Specifically, the state contends that "[w]hile uncontradicted and unimpeached expert testimony may not be arbitrarily disregarded, as respondent notes, it need only be given as much probative weight as the factfinder determines[,]" suggesting that,

even though the trial justice disagreed with the experts' conclusions, she did not ignore the evidence. The state therefore asks us to uphold the trial justice's decision finding respondent legally competent.

"This Court reviews a trial justice's determination regarding a [respondent's] competency for an abuse of discretion." *State v. Mather*, 317 A.3d 728, 733 (R.I. 2024). This Court has been clear that competency is "an absolute basic condition of a fair trial." *State v. Cook*, 104 R.I. 442, 445, 244 A.2d 833, 835 (1968).

"'Competent' or 'competency' means mental ability to stand trial. A person is mentally competent to stand trial if he or she is able to understand the character and consequences of the proceedings against him or her and is able properly to assist in his or her defense." Section 40.1-5.3-3(a)(2). Furthermore, "[a] defendant is presumed competent. The burden of proving that the defendant is not competent shall be by a preponderance of the evidence, and the burden of going forward with the evidence shall be on the party raising the issue." Section 40.1-5.3-3(b). This Court has said that "whenever the issue of competency arises, it is the judge who makes a final determination about the defendant's condition." *In re Tavares*, 885 A.2d 139, 150 (R.I. 2005). The Court has also made clear that, "uncontradicted and unimpeached expert testimony may not be arbitrarily disregarded." *State v. Verdone*, 114 R.I. 613, 622, 337 A.2d 804, 810 (1975).

- 13 -

We reject respondent's contention that the trial justice ignored the uncontroverted expert evidence provided and "failed to articulate a reasonable basis for" doing so. To the contrary, in issuing her decision from the bench, the trial justice began by reviewing the testimony of Dr. Nuñez and Dr. Kemp, as well as the report provided; she ultimately found, however, that "the testimony given and the reports submitted" did not "show by a preponderance of the evidence that the respondent was able to overcome that presumption of competency." The trial justice also directly addressed the expert testimony and the report, concluding that, "based on the answers given by the respondent to the questions asked," respondent's answers "were sufficient." She further indicated that she disagreed "on many points" with what the doctors "found sufficient and what they found lacking * * *." The trial justice determined that the fact that respondent's answers "were not perfect or all inclusive" did not mean that he "was not competent to stand trial." We have said that, "[w]hile judges may rely heavily upon the advice of mental health professionals in assessing a defendant's competency, it is the judge, not the mental health professionals, who must make the final call and who bears the weight of the final decision on his or her shoulders." *In re Tavares*, 885 A.2d at 150. Accordingly, these determinations are well within the province of the trial justice. Based on our review of the report and her bench decision, we are satisfied that the trial justice acted within her discretion in rejecting the conclusions of Dr. Nuñez and Dr. Kemp.

- 14 -

We further disagree with respondent's suggestion that the trial justice relied on "irrelevant facts" in determining legal competency, specifically "his lack of a diagnosed mental illness or cognitive impairment, his brief (and academically disastrous) attendance at an American high school, and his employment as a line cook." (Footnote omitted.)  This "historical information provided to [the] doctors for this evaluation," was only a small portion of the evidence considered by the trial justice.   The trial justice certainly did not hang her hat on it; she addressed it as a piece of her analysis of the issue, as discussed *supra*.

The trial justice ultimately concluded that respondent's answers, along with the testimony and evidence adduced at the hearing, demonstrated that respondent sufficiently understood "the character and consequences of the proceedings against him" and was "able to properly assist in his defense," thus satisfying the requirements set forth in § 40.1-5.3-3(a)(2).   Because "competency is a *legal* condition, not a medical condition, * * * it is well within the province of the court." *In re Tavares*, 885 A.2d at 150.  Accordingly, we hold that the trial justice did not abuse her discretion in finding respondent competent to stand trial.

### Sex Offender Registration

The respondent next argues that "[t]he trial justice erred when she imposed the maximum sex offender registration period of fifteen years."   The respondent alleges that (1) "she ignored [the complainant's] undisputed testimony that her

mutually desired conduct with [respondent] was only criminal because of her age, making [respondent] eligible for a shorter duration of registration" and (2) her "decision to impose fifteen years of sex offender registration ignored the unrebutted clinical testimony of expert Robert Grant, who evaluated [respondent] and determined that he neither posed a danger to the community nor a risk of reoffending."

In response, the state argues that the trial justice did not err in finding that, "based upon the age of the complaining witness, the disparity in ages between her and [respondent], and the circumstances of this case, that his behavior was predatory and that he was a danger to the community." (Footnote omitted.) The state submits that "[t]he fact that the trial justice chose not to exercise the discretion the statute offers based upon the facts of this case, particularly the age of the complaining witness, does not constitute an abuse of discretion."

"[W]e give great respect and deference to the factual determinations of a trial justice." *In re B.H.*, 194 A.3d 260, 264 (R.I. 2018). Indeed, we have said that the Court "shall not disturb the findings of the trial justice unless it is established that he or she misconceived or overlooked relevant material evidence or was otherwise clearly wrong." *State v. Dennis*, 29 A.3d 445, 450 (R.I. 2011) (quoting *State v. Gianquitti*, 22 A.3d 1161, 1165 (R.I. 2011)).

Section 11-37.1-4(j) provides, in relevant part:

"[I]f a juvenile is adjudicated delinquent under § 11-37-8.1 or 11-37-8.3, the court shall assess the totality of the circumstances of the offense and if the court makes a finding that the conduct of the parties is criminal only because of the age of the victim, the court may have discretion to order the juvenile to register as a sex offender as long as the court deems it appropriate to protect the community and to rehabilitate the juvenile offender."

In interpreting § 11-37.1-4(j), we have said that,

"This provision contains a clear two-step analysis: (1) the trial justice must assess the particular circumstances of the case to determine whether the conduct of the juvenile respondent was criminal only because the victim was fourteen years of age or under; and (2) if the trial justice determines that to be the case, she may require registration for only as long as it is necessary to protect the community and to rehabilitate the juvenile." *In re B.H.*, 194 A.3d at 265.

The Legislature, in drafting this section, "limited the discretion to those cases where, under 'the totality of the circumstances,' the victim's age is the *only* reason to find that the respondent's conduct was criminal." *Id.* (brackets omitted).

We discern no error in the trial justice's decision to impose the maximum sex offender registration period of fifteen years. The respondent argues that the trial justice "ignored the unrebutted clinical testimony of expert Robert Grant, who evaluated [respondent] and determined that he neither posed a danger to the community nor a risk of reoffending." The respondent presented testimony from Mr. Grant, a licensed clinical social worker, who recommended that respondent not have to register as a sex offender based on his conclusion that respondent was "not

- 17 -

a predatory sexual offender," and that in his "clinical opinion, [respondent] did not know" that what he did "was against the law." In rendering her decision, the trial justice identified why she was rejecting his recommendation, noting inaccuracies in his report and that the information he "relied on was woefully inadequate to provide an expert opinion to the [c]ourt." In particular, her concern stemmed from the fact that "[t]he witness also had no information regarding the facts surrounding the sexual assault that came out at trial, that the sex occurred late at night, under the cover of darkness, with no adults around, on the couch in the living room of the victim's home, or outside on the lawn." Based upon the reasons the trial justice provided, she did not abuse her discretion in rejecting the recommendation of Mr. Grant.

Turning to her assessment of the totality of the circumstances pursuant to § 11-37.1-4(j), we are of the opinion that the trial justice acted within her discretion by imposing the maximum sex offender registration period of fifteen years. Reviewing the testimony of the complainant, the trial justice opined that the actions of respondent were "criminal and predatory[.]" Although the trial justice focused her analysis on whether the relationship was "romantic," she ultimately determined that the testimony and evidence led her "to consider [respondent's actions] criminal not only because of the age of the parties but more accurately because of their ages and *this respondent's actions*." (Emphasis added.) The trial justice concluded her decision, stating that she "consider[ed] all of the factors and * * * assessed the

totality of the circumstances" and found that "*respondent's action*[*s*] *were criminal and not romantic.*" (Emphasis added.)

We agree with the state that her focus on romance "was responding to the argument made by" respondent that this was a "Romeo and Juliet scenario." Indeed, the trial justice rejected respondent's theory, stating that respondent and complainant "were not star-crossed lovers where the only crime was their age."

Reviewing the evidence provided and the testimony at trial, the trial justice did not err when she declined to exercise the discretion laid out in § 11-37.1-4(j).[1] Accordingly, we hold that the trial justice did not abuse her discretion in imposing the maximum sex offender registration period of fifteen years.

## III

## Conclusion

For the reasons set forth herein, we affirm the orders of the Family Court. The record may be returned to that tribunal.

Justice Goldberg and Justice Lynch Prata did not participate.

---

[1] Although the trial justice should have been more specific in identifying "whether the conduct of the juvenile respondent was criminal only because the victim was fourteen years of age or under," rather than whether the relationship was "romantic," the ultimate decision to give respondent a shorter registration period is discretionary. *In re B.H.*, 194 A.3d 260, 265 (R.I. 2018). Indeed, a trial justice is not required to exercise that discretion. *See* G.L. 1956 § 11-37.1-4(j) ("[T]he court *may have discretion* to order the juvenile to register as a sex offender as long as the court deems it appropriate to protect the community and to rehabilitate the juvenile offender.") (emphasis added).

- 19 -



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | In re E.G.S. |
| **Case Number** | No. 2024-23-Appeal. (NJ 22-4866)<br>No. 2024-24-Appeal. (NJ 23-288) |
| **Date Opinion Filed** | June 1, 2026 |
| **Justices** | Suttell, C.J., Robinson, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Newport County Family Court |
| **Judicial Officer from Lower Court** | Associate Justice Karen Lynch Bernard |
| **Attorney(s) on Appeal** | For Petitioner:<br><br>Virginia M. McGinn<br>Department of Attorney General |
| | For Respondent:<br><br>Michael Graham Ewart<br>Rhode Island Public Defender |

SU-CMS-02A (revised November 2022)