July 2, 2024

State                               :

v.                               :

Edward Mather.                     :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|  |  |
|---|---|
| State | : |
| v. | : |
| Edward Mather. | : |

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Long, for the Court.** These consolidated cases came before the Supreme Court after we granted two identical petitions filed by the defendant, Edward Mather (defendant or Mr. Mather), for a writ of certiorari. Mr. Mather seeks review of interlocutory orders of the Superior Court that denied his petitions to discharge from detention orders of commitment pursuant to G.L. 1956 chapter 5.3 of title 40.1, filed in two underlying criminal matters. This Court issued the writ and assigned the matter for full briefing. For the reasons set forth in this opinion, we

- 1 -

quash the orders of the Superior Court and remand this matter for further proceedings consistent with this opinion.[1]

## Facts and Procedural History

This matter arises out of the attempted prosecution of Mr. Mather in two separate criminal matters filed in Newport County Superior Court. On April 11, 2018, the state filed a four-count criminal information charging Mr. Mather with (1) violating a no-contact order after prior convictions of domestic assault; (2) two counts of vandalism; and (3) simple assault. Thereafter, on April 26, 2018, a trial justice arraigned Mr. Mather on the foregoing charges, set his bail in the amount of $5,000, and ordered that he undergo a psychiatric evaluation at Eleanor Slater Hospital, a facility managed by the Department of Behavioral Healthcare, Developmental Disabilities and Hospitals (BHDDH), to determine his competency to stand trial. Less than six months later, on October 3, 2018, the state filed a second, five-count criminal information charging Mr. Mather with (1) domestic assault by strangulation; (2) one count of simple domestic assault; (3) two counts of violating a no-contact order after prior convictions of domestic assault; and (4) refusing to relinquish, or damaging or obstructing, a telephone needed for emergency use. Mr. Mather was never arraigned pursuant to this second information.

---

[1] We acknowledge and thank the Office of the Mental Health Advocate for its submission as amicus curiae in this matter.

Following Mr. Mather's psychiatric evaluation, BHDDH submitted a competency report to the Superior Court; and on June 29, 2018, the trial justice ordered that Mr. Mather could not stand trial due to his incompetency and that he required hospitalization at Eleanor Slater Hospital. According to the trial justice, the conclusion of the competency report stated that Mr. Mather would become competent prior to the dismissal of charges under the four-count information and ordered a semiannual review and report in six months.

At a commitment hearing held on February 13, 2019, a second trial justice found, based upon a subsequent report issued by BHDDH, that Mr. Mather remained incompetent to stand trial. The trial justice ordered that Mr. Mather remain committed to the custody of BHDDH but found that he could be placed in an outpatient facility without imperiling the peace and safety of himself or others. The trial justice ordered his discharge to LaBelle House Group Home (the outpatient facility) pursuant to § 40.1-5.3-3(i)(2)[2] subject to certain conditions, including

---

[2] General Laws 1956 § 40.1-5.3-3(i)(2) provides the following:

> "If the court finds that a defendant who is incompetent may be placed on outpatient status without imperiling the peace or safety of the public or the safety of himself or herself, it may commit the defendant to an appropriate outpatient facility that agrees to provide treatment to the defendant and adhere to the requirements of this section, in order that the defendant may receive treatment to restore or establish his or her competency."

compliance with the rules and regulations of the outpatient facility and its treatment plan, and abstinence from alcohol or the consumption of other unauthorized substances. The trial justice further ordered that the appropriate supervisory authority immediately return Mr. Mather to Eleanor Slater Hospital should he violate the conditions of the order, engage in threatening or aggressive behavior, or require hospitalization. The trial justice also authorized the outpatient facility to initiate Mr. Mather's return to Eleanor Slater Hospital if he were to leave the group home without informing the outpatient facility. Lastly, the trial justice converted Mr. Mather's District Court bail on his second, five-count criminal information from $10,000 with surety to $10,000 personal recognizance.

On July 6, 2020, Christine Montross, M.D., of the forensic unit at Eleanor Slater Hospital issued a written semiannual review and opined as follows regarding Mr. Mather's competency to stand trial on the charge of domestic assault by strangulation:

> "In my opinion, with a reasonable degree of medical certainty, Mr. Mather remains mentally incompetent to stand trial. He has only had a partial response to treatment during his group home residency and has not, in my opinion, sufficiently improved to the point of being restored to competency. At present, his disorganized thoughts, tangential speech, and tendency toward mood lability impair his ability to participate in discussions and decision-making regarding his case. I therefore continue to recommend him to the court as incompetent to stand trial because he does not have sufficient present ability to work with his attorney on his case.

"In my opinion, it is increasingly unlikely that Mr. Mather will become competent prior to the dismissal of the charges pursuant to the statute. Psychotic disorders usually respond to treatment. With nearly two years of treatment with antipsychotic medication and mood stabilizing medication in supervised treatment settings, Mr. Mather's symptoms of unspecified schizophrenia spectrum or other psychotic disorder have improved, but they have not improved to the point that he is able to discuss his plea options with his attorney, make logical decisions about his case, and understand the implications of the charge. Therefore, in my opinion, his competency to stand trial is non-restorable."

Doctor Montross further opined that Mr. Mather could remain on outpatient status without imperiling the peace and safety of himself or others because he lived in a supervised group home and continued to adhere to treatment. She therefore recommended that Mr. Mather continue to reside at the outpatient facility, the best and least restrictive placement option.

Mr. Mather subsequently filed a petition to discharge from the detention order of commitment in both of his pending criminal matters. Mr. Mather argued that, based on the undisputed determination by Dr. Montross that his competency to stand trial was nonrestorable prior to the dismissal of the charges, § 40.1-5.3-3(m) and principles of due process, as discussed in *State v. Morin*, 606 A.2d 681 (R.I. 1992),

compelled the termination of the order of detention and dismissal of the pending charges within thirty days of a hearing on the petition.[3]

The trial justice held a hearing on Mr. Mather's petitions on December 9, 2020. The state acknowledged that Mr. Mather's competency to stand trial was nonrestorable prior to the dismissal of the charge of domestic assault by strangulation. Nevertheless, the state argued that Mr. Mather's confinement was not "detention" within the meaning of § 40.1-5.3-3(m) because the outpatient facility was unlocked; as such, the state argued, Mr. Mather's confinement was distinguishable from *Morin*, wherein an incompetent defendant was hospitalized, and thus did not raise due-process concerns. Counsel for Mr. Mather stipulated that Mr. Mather possessed the ability to come and go from the outpatient facility according to its rules but argued that such fact was irrelevant to the question before the court.

---

[3] Section 40.1-5.3-3(*l*) authorizes a defendant committed pursuant to § 40.1-5.3-3(i)(2) to seek a competency review hearing. Section 40.1-5.3-3(m) provides the following, in relevant part:

> "If the court finds that the defendant is incompetent and that a reasonable likelihood does not exist that the defendant will become competent prior to the dismissal of the charges pursuant to subsection (j), it shall order that thirty (30) days thereafter the defendant be discharged from detention under the order of commitment. Upon entry of the order, the state may commence proceedings seeking to commit the defendant pursuant to § 40.1-5-8."

The court denied Mr. Mather's petitions in a decision issued from the bench. The trial justice reasoned that § 40.1-5.3-3(m) was not applicable to Mr. Mather because his commitment to the outpatient facility did not constitute "detention" pursuant to that subsection. The trial justice also concluded that Mr. Mather's commitment to the outpatient facility did not present the due-process concerns discussed in *Morin* or those contemplated by the Supreme Court in *Jackson v. Indiana*, 406 U.S. 715 (1972), based on his determination that the statute provided for Mr. Mather's eventual discharge, as opposed to an indefinite period of commitment. A succinct order denying Mr. Mather's petition to discharge from detention order of commitment entered in each of Mr. Mather's underlying criminal matters on March 23, 2021.[4]

---

[4] On February 28, 2021, Paul Baker, M.D., of the forensic unit at Eleanor Slater Hospital issued a written semiannual review and stated the following concerning Mr. Mather's competency to stand trial on the charge of violation of a no-contact order with prior convictions of domestic assault:

> "In my opinion, with a reasonable degree of medical certainty, Mr. Mather remains mentally incompetent to stand trial. Mr. Mather continues to demonstrate significant thought disorganization which impairs his competency-related abilities. He cannot describe the charges or their potential consequences. His ability to learn and retain new information, such as with a review of the nolo plea, is impaired. He cannot identify any information that would be important to convey to his attorney, and he cannot describe how he would approach potential decisions in his case, such as a hypothetical plea bargain.

Mr. Mather subsequently sought review of the March 23, 2021 order via identical petitions for writ of certiorari, arguing that his continued institutionalization at the outpatient facility restricted his liberty and violated due process and that § 40.1-5.3-3(m) compelled his discharge from the outpatient facility and the dismissal of the charges pending against him. This Court granted the petitions, consolidated the cases for review, and issued the writ on February 21, 2022.

We consider whether the trial justice erred in denying Mr. Mather's petitions to discharge from detention orders of commitment pursuant to § 40.1-5.3-3.

---

> "In my opinion, Mr. Mather will not become competent prior to the dismissal of the charges pursuant to the statute. Mr. Mather has now had consistent treatment with a robust regimen of antipsychotic and mood-stabilizing medications. He has also been receiving an injectable formulation of an antipsychotic medication, which further supports his medication adherence. While some of his symptoms of psychosis have improved, he continues to have significant residual thought disorganization. In my opinion, it is unlikely that Mr. Mather's mental status will improve beyond his current baseline. Therefore, I do not believe his competency is restorable."

Doctor Baker recommended that Mr. Mather continue (1) to reside at the outpatient facility as the best and least restrictive placement option and (2) to work with the outpatient facility regarding his care and treatment.

The trial justice accepted the reports of Drs. Montross and Baker by order dated March 19, 2021.

## Standard of Review

This Court reviews a trial justice's determination regarding a defendant's competency for an abuse of discretion. *State v. Buxton*, 643 A.2d 172, 175 (R.I. 1994). However, we review questions of statutory interpretation *de novo*. *State v. Bienaime*, 263 A.3d 77, 83 (R.I. 2021). Finally, trial justices decidedly abuse their discretion when they make a material error of law. *See Votolato v. Merandi*, 747 A.2d 455, 460 (R.I. 2000).

## Discussion

The state asserts that the trial justice properly denied Mr. Mather's petitions to discharge from detention orders of commitment, and correctly applied § 40.1-5.3-3(m), when he concluded that the provision does not apply to individuals committed to outpatient facilities because their confinement does not constitute "detention" pursuant to the statute. We disagree.

In conducting our *de novo* review of a statute, this Court must achieve its principal goal of giving effect to the purpose of the statute as the Legislature intended. *See State v. McGuire*, 273 A.3d 146, 152 (R.I. 2022). When this Court determines that a statute's language is both clear and unambiguous, we must interpret the statute in a literal manner, give its words their plain and ordinary meaning, and refrain from interpreting the statute in a way that reaches an absurd result or otherwise thwarts its purpose. *See id.* Additionally, we construe the instant

statutory scheme in a liberal fashion based on our prior determination that it serves a remedial purpose. *In re Tavares*, 885 A.2d 139, 149 (R.I. 2005).

In accordance with these principles of statutory interpretation, we must give effect to the purpose of § 40.1-5.3-3, a pretrial commitment statute. This Court has previously explained that, in enacting § 40.1-5.3-3, "the Legislature intended that incompetent defendants be treated so that competency would be restored, and that competent defendants would be tried." *In re Tavares*, 885 A.2d at 149. Additionally, while the Legislature undoubtedly intended for § 40.1-5.3-3 to protect the rights of criminal defendants and to serve the public's interest in the prosecution of crimes, the "paramount goal" is to protect the rights of defendants accused of criminal wrongdoing after the state has obtained their pretrial commitment. *Id.* Ultimately, this Court must ensure that the length of an individual's commitment complies with due process:

> "[A] person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant." *Jackson*, 406 U.S. at 738.

Section 40.1-5.3-3, entitled "Competency to stand trial[,]" provides the procedural framework for determining whether a defendant has the mental ability to

- 10 -

face criminal charges brought by the state and establishes various procedural safeguards to protect the rights of the accused and the safety of the public. *See generally* § 40.1-5.3-3. The provisions of § 40.1-5.3-3 pertaining to the issue under consideration state, in relevant part, as follows:

> "(a)(2) 'Competent' or 'competency' means mental ability to stand trial. A person is mentally competent to stand trial if he or she is able to understand the character and consequences of the proceedings against him or her and is able properly to assist in his or her defense.
>
> "* * *
>
> "(a)(5) 'Incompetent' or 'incompetency' means mentally incompetent to stand trial. A person is mentally incompetent to stand trial if he or she is unable to understand the character and consequences of the proceedings against him or her and is unable properly to assist in his or her defense.
>
> "* * *
>
> "(g) **Hearing.** Upon receipt of the report and appropriate notice to the parties, the court shall hold a hearing unless the report concludes that the defendant is competent and the defendant and the attorney for the state in open court state their assent to the findings on the record. At the hearing, the report shall be introduced; other evidence bearing on the defendant's competence may be introduced by the parties; and the defendant may testify, confront witnesses, and present evidence on the issue of the defendant's competency. On the basis of the evidence introduced at the hearing, the court shall decide if the defendant is competent.
>
> "* * *

"(h)(2) If the court finds that a defendant is incompetent, it shall commit him or her to the custody of the director [of BHDDH] for the purpose of determining whether or not the defendant is likely to imperil the peace and safety of the people of the state or the safety of himself or herself and whether the defendant will regain competency within the maximum period of any placement under this chapter.

"* * *

"(i)(2) If the court finds that a defendant who is incompetent may be placed on outpatient status without imperiling the peace or safety of the public or the safety of himself or herself, it may commit the defendant to an appropriate outpatient facility that agrees to provide treatment to the defendant and to adhere to the requirements of this section, in order that the defendant may receive treatment to restore or establish his or her competency.

"* * *

"(j) **Period of commitment.**  When a court commits a defendant pursuant to subsection (i)(2) * * *, it shall compute, counting from the date of entry to the order of commitment, the date of the expiration of the period of time equal to two thirds (2/3) of the maximum term of imprisonment for the most serious offense with which the defendant is charged. * * * In the order of commitment, the court shall provide that if, on the date so computed, the defendant is still committed under the order, the charges against the defendant shall be dismissed.

"* * *

"(*l*) **Defendant's right to petition.**  A defendant committed pursuant to subsection (i)(2) * * * may at any time petition the court to review the state of the defendant's competency.

- 12 -

"(m) **Hearing on petition.** Upon receipt of a petition pursuant to subsection * * * (*l*) and appropriate notice to the defendant, the state, and the director [of BHDDH], the court shall hold a hearing at which the parties may introduce evidence as to the defendant's competency, including any reports of the director, and the defendant may testify, confront witnesses, and present evidence as to the defendant's competency and prognosis. On the basis of the evidence, the court shall make a finding as to the defendant's competency and, if the defendant is found to be incompetent, whether a reasonable likelihood exists that the defendant will become competent prior to the dismissal of the charges pursuant to subsection (j). If the court finds that the defendant is competent, it shall enter an order to that effect. If the court finds that the defendant is incompetent and that a reasonable likelihood exists that the defendant will become competent prior to the dismissal of the charges pursuant to subsection (j), it shall order continuation of the commitment of the defendant. If the court finds that the defendant is incompetent and that a reasonable likelihood does not exist that the defendant will become competent prior to the dismissal of the charges pursuant to subsection (j), it shall order that thirty (30) days thereafter the defendant be discharged from detention under the order of commitment. Upon entry of the order, the state may commence proceedings seeking to commit the defendant pursuant to § 40.1-5-8."

Section 40.1-5.3-3(i)(2) sets forth the requirements for determining whether an incompetent defendant may be committed to an outpatient facility, "in order that the defendant may receive treatment to *restore or establish* his or her competency." Section 40.1-5.3-3(i)(2) (emphasis added). Notwithstanding commitment to an outpatient facility, a defendant may, pursuant to § 40.1-5.3-3(*l*), seek judicial review of his or her competency status at any time. Section 40.1-5.3-3(m) governs such

- 13 -

review hearing, providing a defendant with an opportunity to be heard regarding her or his competency and prognosis. Section 40.1-5.3-3(m). Importantly, the plain language of § 40.1-5.3-3(m) provides the court with only three possible dispositions following the hearing: (1) a finding that the defendant is competent and entry of an order to that effect; (2) a finding that the defendant is incompetent but that competency is likely restorable prior to dismissal of the charges pursuant to subsection (j), thereby necessitating an order that continues pretrial commitment; or (3) a finding that the defendant is incompetent and that competency is likely nonrestorable prior to dismissal of the charges pursuant to subsection (j), thereby compelling that the defendant "be discharged from detention" thirty days thereafter. *Id.* Finally, § 40.1-5.3-3(j) limits the duration of a defendant's commitment: the period of commitment expires after two-thirds of the maximum term of imprisonment for the most serious offense, or thirty years in the event that the state charges a defendant with an offense that carries a life sentence. Section 40.1-5.3-3(j).

The record reveals that from April 26, 2018, the date of Mr. Mather's arraignment on the four-count criminal information, § 40.1-5.3-3 operated as intended: Mr. Mather was subject to "a series of procedures, evaluations, and hearings designed to ensure that [he would be] competent to stand trial." *In re Tavares*, 885 A.2d at 149. Although he was not arraigned on the five-count criminal

- 14 -

information filed on October 3, 2018, the court held a commitment hearing pursuant to § 40.1-5.3-3(g) and (h)(2) on February 13, 2019. Mr. Mather remained committed to the custody of BHDDH and was subsequently placed at the outpatient facility with a treatment plan "in order that [he could] receive treatment to restore or establish his * * * competency." Section 40.1-5.3-3(i)(2).

The order that entered following the February 13, 2019 commitment hearing evinces Mr. Mather's detention: although Mr. Mather could be placed at the outpatient facility without imperiling the peace and safety of the public, the order compels his return to Eleanor Slater Hospital—a location that the state concedes constitutes "detention" pursuant to the statute—in the event that he fails to comply with the rules of the outpatient facility or behaves in an inappropriate manner. That the outpatient facility is unlocked is of no moment because Mr. Mather is not at complete liberty to come and go from the outpatient facility without informing staff; to do so would also subject him to a return to Eleanor Slater Hospital.

Following the issuance of the July 6, 2020 semiannual review by Dr. Montross, wherein she opined that Mr. Mather's symptoms of unspecified schizophrenia spectrum or other psychotic disorder had not improved to the point where he could discuss plea options, make decisions about his case, or understand the implications of the charge of domestic assault by strangulation, Mr. Mather exercised his right to seek judicial review of his competency status. In petitioning

for judicial review of his competency to stand trial for the pending charges, he sought to test whether his continued commitment is consistent with the "paramount goal" of the pretrial commitment statute: the protection of his due-process rights. *See In re Tavares*, 885 A.2d at 149.

The trial justice committed a reversible error of law when he denied the petitions to discharge from detention orders of commitment. Notwithstanding the undisputed conclusion by Dr. Montross that Mr. Mather's competency to stand trial is nonrestorable prior to the dismissal of the charge of domestic assault by strangulation, the trial justice nevertheless ordered Mr. Mather's continued commitment to the outpatient facility based on an erroneous conclusion that the commitment did not constitute detention within the meaning of § 40.1-5.3-3(m). However, the focus on "detention" was misplaced. The plain language of § 40.1-5.3-3(m) authorizes only three possible dispositions for defendants who are subject to a commitment order, whether placed in an inpatient facility or at an outpatient facility. When reading § 40.1-5.3-3 liberally to effectuate its purpose as a remedial statute, it is clear that defendants who are committed and placed at outpatient facilities pursuant to § 40.1-5.3-3(i)(2) are subject to detention within the meaning of § 40.1-5.3-3(m).

Moreover, as *Morin* instructs, the trial justice's acceptance of the undisputed conclusion by Dr. Montross—that Mr. Mather's competency to stand trial is

nonrestorable prior to the dismissal of the pending charges—triggers the due-process principles established by *Jackson*. *See Morin*, 606 A.2d at 682. On the record in this case, it is clear that Mr. Mather's continued commitment no longer bears a reasonable relationship to the purpose of his commitment under § 40.1-5.3-3(i)(2).[5] As a result, we reject the state's attempt to distinguish *Morin* on the basis that it involved a defendant who was confined in a hospital: Mr. Mather is clearly detained pursuant to § 40.1-5.3-3, irrespective of his outpatient status. Based on the trial justice's determination that Mr. Mather's competency to stand trial is nonrestorable prior to the dismissal of the pending charges pursuant to subsection (j), the Supreme Court's holding in *Jackson* confirms that due process requires discharge from the detention orders of commitment thirty days after such determination. *See Jackson*, 406 U.S. at 738; *Morin*, 606 A.2d at 682.

Finally, we acknowledge the state's concern with discharging individuals who are subject to detention orders of commitment pursuant to § 40.1-5.3-3, but who may pose a danger to the community upon discharge; and the state's attendant request to provide trial justices with flexibility when holding a hearing pursuant to § 40.1-5.3-3(m). We recognize the delicate and difficult balance that exists when

---

[5] The state conceded at oral argument that Mr. Mather has missed six periodic reviews because his competency is no longer restorable; and further, that the state does not plan to seek any additional reviews in the future based on the conclusion that his competency is nonrestorable.

- 17 -

weighing the rights of the accused and the state's interest in public safety; and consequently, we emphasize that § 40.1-5.3-3(m) does not require discharge from the detention order of commitment until thirty days after the court determines that a defendant is incompetent and that competency to stand trial is nonrestorable. It further provides that "the state may commence proceedings seeking to commit the defendant pursuant to § 40.1-5-8." Section 40.1-5.3-3(m). As such, the statute offers the possibility of pursuing civil commitment as a means of safeguarding the public from a potentially dangerous defendant. Accordingly, we hold that where, as here, a defendant is found to be incompetent to stand trial and competency is nonrestorable prior to the statutory dismissal period contained in § 40.1-5.3-3(j), the defendant is entitled to be discharged from detention under the order of commitment thirty days thereafter pursuant to § 40.1-5.3-3(m).[6]

Based on our review of the record, this Court concludes that the trial justice erroneously denied Mr. Mather's petitions to discharge him from the outpatient facility.

---

[6] In the identical petitions for writ of certiorari, Mr. Mather sought review of the March 23, 2021 orders of the Superior Court, which simply and concisely denied his petitions to discharge from detention order of commitment in the two criminal matters pending in Newport County Superior Court. We limit our review accordingly and decline to consider Mr. Mather's request to order the dismissal of the pending charges on the record before us.

## Conclusion

We quash the orders of the Superior Court and remand the record in this case for further proceedings consistent with this opinion.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State of Rhode Island v. Edward Mather. |
| **Case Number** | No. 2021-109-M.P. (N2/18-121A)<br>No. 2021-110-M.P. (N2/18-264A) |
| **Date Opinion Filed** | July 2, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian Van Couyghen |
| **Attorney(s) on Appeal** | For State:<br><br>Sean Paul Malloy<br>Department of Attorney General |
| | For Defendant:<br><br>Kara J. Maguire<br>Rhode Island Public Defender |