Filed 10/27/25  P. v. Olson CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JEFFREY LEON OLSON,<br><br>    Defendant and Appellant. | F085849<br><br>(Super. Ct. No. MCR066322)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Ernest J. LiCalsi, Judge.

Dale Dombkowski, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Darren K. Indermill and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Jeffrey Leon Olson was charged with murder and two associated firearm enhancements.  He pleaded not guilty and not guilty by reason of insanity, and he waived a jury trial.  The trial court found defendant guilty of first degree murder, found the firearm allegations true, and found defendant had not proved by a preponderance of the evidence that he was insane at the time of the crime.

Defendant now appeals his conviction, asserting the trial court erred in failing to hold a hearing sua sponte to determine whether he was competent to stand trial in light of (1) the opinions of two court-appointed doctors that defendant should be committed to a state hospital due to his insanity at the time of the crime, (2) other symptoms of his conditions noted by the doctors, (3) defendant's suicidal ideation, and (4) his refusal to attend court on one occasion.  Defendant argues this constitutes substantial evidence of incompetence, which should have led the trial court to pause the criminal proceedings and hold a competency hearing.

The People contend these facts do not constitute substantial evidence of incompetence to stand trial such that the trial court should have called for a competency hearing on its own initiative.  The People note that the two doctors only opined on defendant's insanity at the time of the crime, arguing this is an issue that is legally and factually distinct from defendant's competency to stand trial.  The People argue that the facts highlighted by defendant do not demonstrate his inability to understand the nature of the proceedings or assist with his defense.

We affirm.

## PROCEDURAL SUMMARY

On May 26, 2020, the Madera County District Attorney filed an information charging defendant with the murder of Maigan Olson (Pen. Code, § 187, subd. (a);

count 1).[1]  The information further alleged, in the commission of count 1, defendant personally used a firearm (§§ 12022.5, subd. (a), 12022.53, subd. (b)), personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), and personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)).  On August 25, 2020, Defendant pleaded not guilty and not guilty by reason of insanity.  The court appointed Drs. Michael Zimmerman and Adrian Della Porta under section 1026 to evaluate defendant's sanity at the time of the offense.

Dr. Della Porta submitted his report to the court in September 2020.  The doctor reported that, during the interview, defendant was generally a reliable historian and expressed that he understood the nature of the charges against him and the purpose of the evaluation.  Defendant described the voices he had been hearing, including that they had previously told him to kill himself.  Dr. Della Porta believed that defendant "was in an acute psychotic episode" during the shooting, opining that the "psychotic process … clouded his thinking."  Dr. Della Porta further opined defendant "remain[ed] a substantial danger to the health and safety of others" (boldface omitted), and recommended the court place him at a state psychiatric hospital for restoration of sanity.

Dr. Zimmerman submitted his full report to the court in December 2020.  The doctor reported that, over the course of four interviews, defendant's mental status exams were normal, and he expressed that he understood the nature of the charges against him and the purpose of the evaluation.  Defendant often "rapidly switch[ed] from realistic to unrealistic statements" and described the voices he had been hearing in the years prior, including that in 2019 and 2020 the voices had told him to kill himself.  The doctor conducted tests revealing "severe psychopathology," including high scores on the paranoia and schizophrenic scales.  Dr. Zimmerman diagnosed defendant with

---

[1]  All further undesignated statutory references are to the Penal Code except as otherwise stated.

3.

"Schizophrenia, Continuous," opined that defendant was insane at the time of the shooting, believed defendant remained a substantial danger to the health and safety of others and himself, and recommended defendant be placed in a state hospital. At trial, when Dr. Zimmerman was asked whether defendant's clarity returned after shooting his wife, the doctor responded, "that is how it works in my experience." Dr. Zimmerman also noted that defendant's schizophrenia had "periods of alleviation."

On September 15, 2021, defendant refused to leave his cell to attend a court hearing. The next day, the trial court issued a continuous order to extract him from his cell and transport him to court for the duration of the prosecution. The guilt phase of the trial began on May 9, 2022, followed by the sanity phase on August 29, 2022. On January 9, 2023, the trial court found defendant guilty of first degree murder and found the firearm allegations true. On January 30, 2023, the court found defendant had not proved by a preponderance of the evidence that he was insane at the time of the crime.

On March 1, 2023, the trial court sentenced defendant to an aggregate term of 50 years to life: 25 years to life for the murder and a consecutive 25 years to life term for the section 12022.53, subdivision (d), enhancement; the court stayed execution of the remaining firearm enhancements.

On March 2, 2023, defendant filed a notice of appeal.

## FACTUAL SUMMARY

On April 16, 2020, defendant and his wife Maigan argued in their residence; defendant played with their newborn child while their daughter worked on her laptop nearby. When Maigan said, "'I'm done with this arguing,'" defendant left the baby, walked into the master bedroom, returned with a "long rifle," and shot his wife three or four times. Defendant's daughter ran from the house and told a neighbor "he shot her." Defendant then exited the house and asked his daughter, in a raised but monotone voice, to "come back" and "'[c]ome give me a hug.'" Later, when officers approached defendant, he said, "'She's dead'" and "'I shot her.'" When an officer told defendant to

4.

hand the infant to him, and when another officer arrested him, defendant willingly complied with a "'lack of emotion.'" Later, defendant's father-in-law said to an officer that defendant was "'probably off his medications.'"

Under questioning by the police, defendant indicated he had anxiety and had been hearing voices for about six months, stated he could not explain why he shot his wife, and admitted he stopped taking his anxiety and antipsychotic medication a year prior. On occasion, defendant made unintelligible and incongruent statements to the officers, but he often answered the questions asked by the officers and denied that the voices told him to kill his wife.

## DISCUSSION

Defendant contends the evidence before the court was sufficient to trigger the trial court's sua sponte obligation to state a doubt as to defendant's mental competence to stand trial. The People disagree, as do we.

### A. Legal Principles and Standard of Review

"Both the due process clause of the Fourteenth Amendment to the United States Constitution and state law prohibit the state from trying or convicting a criminal defendant while he … is mentally incompetent." (*People v. Rogers* (2006) 39 Cal.4th 826, 846 (*Rogers*); see § 1367, subd. (a); *Drope v. Missouri* (1975) 420 U.S. 162, 172 (*Drope*).) "A defendant is mentally incompetent … if, as a result of a mental health disorder or developmental disability, [he] is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a); see *People v. Rodriguez* (2014) 58 Cal.4th 587, 624 [noting the competency inquiry focuses on whether a defendant can "consult with [his] attorney with a reasonable degree of rational understanding or lacks a rational and factual understanding of the proceedings against [him]"].)

If the trial court is presented with "'"substantial evidence of [a defendant's] present mental incompetence,"'" the defendant is entitled to a competency hearing "'"as

5.

a matter of right.” ’ ” ” (*People v. Woodruff* (2018) 5 Cal.5th 697, 721 (*Woodruff*).)

Substantial evidence of incompetence is evidence "that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial." (*Rogers*, *supra*, 39 Cal.4th at p. 847.) "Evidence of incompetence may emanate from several sources, including the defendant's demeanor, irrational behavior, and prior mental evaluations." (*Ibid.*) The substantial evidence test can also be satisfied if a psychiatrist or psychologist opines that, because of mental illness, the defendant cannot understand "the purpose or nature of the criminal proceedings being taken against him or is incapable of assisting in his defense or cooperating with counsel .…" (*People v. Pennington* (1967) 66 Cal.2d 508, 519 (*Pennington*).) The United States Supreme Court has noted that "even one … factor[] standing alone may, in some circumstances, be sufficient," and there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed." (*Drope, supra*, 420 U.S. at p. 180.) However, any such evidence "must bear on the defendant's competency to stand trial, rather than simply establish the existence of a mental illness that could conceivably affect his ability to understand the proceedings or assist counsel." (*People v. Ghobrial* (2018) 5 Cal.5th 250, 270 (*Ghobrial*).) California courts have consistently held that, to be entitled to a competency hearing, "a defendant must exhibit more than bizarre, paranoid behavior, strange words, or a preexisting psychiatric condition that has little bearing on the question of whether the defendant can assist his defense counsel." (*People v. Ramos* (2004) 34 Cal.4th 494, 508 (*Ramos*); accord *Rogers, supra*, 39 Cal.4th at p. 847.)

If substantial evidence exists showing the defendant cannot assist counsel or understand the proceedings, the trial court is to "state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent." (§ 1368, subd. (a); see *Ghobrial, supra*, 5 Cal.5th at p. 274 [noting how substantial evidence of present incompetence could require "the trial court, on its own motion, to declare a doubt"].) On appeal, the court examines "the inferences that

were to be drawn from the undisputed evidence" and asks "whether, in light of what was then known, the failure to make further inquiry into [the] petitioner's competence to stand trial, denied him a fair trial." (*Drope, supra*, 420 U.S. at pp. 174, 175.) "'The decision whether to order a competency hearing rests within the trial court's discretion, and may be disturbed upon appeal "only where a doubt as to [mental competence] may be said to appear as a matter of law or where there is an abuse of discretion."'" (*Woodruff, supra*, 5 Cal.5th at p. 721; see *Rogers, supra*, 39 Cal.4th at p. 847 ["A trial court's decision whether or not to hold a competence hearing is entitled to deference, because the court has the opportunity to observe the defendant during trial."]).) However, "'[a] trial court reversibly errs if it fails to hold a competency hearing when one is required under the substantial evidence test.'" (*Woodruff, supra*, at p. 721.)

## B. Analysis

Here, defendant contends the trial court should have recognized substantial evidence that he was not competent to stand trial and held a competency hearing, given the two doctors' opinions that defendant was not sane at the time of the crime, the evidence on which they based those opinions, defendant's expressed suicidal ideation, and his refusal to attend court. The court rejects defendant's arguments.

In *Ghobrial, supra*, 5 Cal.5th at pages 269 through 274, our Supreme Court rejected a similar argument that the trial court should have paused criminal proceedings and conducted a competence hearing. There, the record indicated the defendant did not exhibit any behavior over the course of the three-year proceedings before the trial court. (*Id.* at p. 270.) Further, no issue was ever raised regarding the defendant's competence by the defendant or his counsel, by the court, or by any of the mental health professionals who treated the defendant in those three years. (*Id*. at p. 271.) In the penalty phase, the defendant presented evidence that he had severe mental health issues, mainly from multiple witnesses who testified the defendant had previously displayed an inability to think and communicate logically. (*Ibid.*) This included one doctor who opined the

7.

defendant's auditory hallucinations interfered with his ability to communicate, and the defendant's thought processes were disorganized due to his mental health issues. (*Ibid.*) The Supreme Court concluded, "[u]ltimately, although defense counsel's penalty phase mitigation evidence showed that [the] defendant suffered from serious mental illness, … [it] did not constitute substantial evidence of present incompetence that required the trial court, on its own motion, to declare a doubt .…" (*Id.* at p. 274.) The court noted that the witness testimony and doctor's opinion did not reveal whether the defendant's symptoms were ones that persisted through trial, but instead concerned the defendant's condition before trial began. (*Id.* at p. 272.) The court also noted the absence of any indication that the defendant's symptoms manifested during the trial itself, as well as that no one raised any doubts about the defendant's competence at any point. (*Ibid.*)

California courts have concluded similarly in situations where the evidence highlighted on appeal failed to demonstrate that the defendant's mental health condition affected his or her ability to assist with defending the case or understand the proceedings. For example, in *People v. Bloom* (2022) 12 Cal.5th 1008, at pages 1030–1035 (*Bloom*), no violation of state or federal constitutional rights was found in the trial court's failure to suspend trial and institute competency proceedings, despite the trial court's awareness of the defendant's history of mental illness; that mental health professionals had opined the defendant was incompetent in a previous trial years prior; that defense counsel stated the defendant had "'always been skirting the edges of incompetence'" (*id.* at p. 1031); that the defendant engaged in conspiratorial and paranoid behaviors throughout his trial; and that the defendant refused to attend the sanity phase proceedings. The *Bloom* court reminded that to raise a doubt, "'expert testimony that a defendant is psychopathic, homicidal, or a danger to him- or herself and others'" is not, on its own, dispositive of the competency question. (*Id.* at p. 1032.) Regarding the defendant's refusal to attend court, the Supreme Court stated that no competency hearing was required when a "'defendant's lack of cooperation' arises from unwillingness rather than inability." (*Id.* at p. 1035.) In

8.

*People v Welch* (1999) 20 Cal.4th 701, 742 (*Welch*), the court found no abuse of discretion in the trial court's failure to hold a competency hearing just because the defendant presented evidence that he had severe delusional paranoid disorder and paranoid schizophrenia.  Other Courts of Appeal have consistently rejected incompetency arguments where the evidence of the defendant's behaviors can be characterized as "'"mere bizarre actions" or statements .…'"  (*Bloom, supra*, at p. 1033.)

Here, the court finds the record lacking in substantial evidence indicating defendant was unable to understand the nature of the criminal proceedings or assist his counsel in a rational manner regarding his defense.  (§ 1367, subd. (a).)  Defendant contends the trial court should have recognized the opinions of Drs. Della Porta and Zimmerman, that defendant was insane at the time of the crime and should be placed in a state hospital for the restoration of sanity,  as evidence that defendant also was incompetent to stand trial.  (See *Pennington, supra*, 66 Cal.2d at p. 519 [noting the substantial evidence test can be satisfied if "a psychiatrist or qualified psychologist [citation], who has had sufficient opportunity to examine the accused, states under oath with particularity that in his professional opinion the accused is, because of mental illness, incapable of understanding the purpose or nature of the criminal proceedings being taken against him or is incapable of assisting in his defense or cooperating with counsel"].)

To the extent defendant requests the court draw a per se equivalence between the doctors' opinions on defendant's sanity at the time of the crime and his sanity during the court proceedings, such an equivalence is rejected.  The "issues involved in an insanity defense are not the same as those involved in a competency to stand trial evaluation" (*People v. Campbell* (1987) 193 Cal.App.3d 1653, 1662, fn. 3; see *People v. Coogler* (1969) 71 Cal.2d 153, 168, fn. 7 [noting the factors that may tend to establish the defendant's disability under § 1367 do not necessarily coincide with those that tend to

9.

establish he was insane under the *M'Naghten* test[2] at time of the crime]; *People v. Brock* (1962) 57 Cal.2d 644, 648–649 [discussing the differences between sanity under § 1368 and sanity under the *M'Naghten* test].)  And as courts have recognized, merely having a preexisting psychiatric condition is not enough to trigger the court's duty without some other indication the conditions affected defendant's competence during the trial proceedings.  (*Ramos, supra*, 34 Cal.4th at p. 508; *Rogers, supra*, 39 Cal.4th at p. 847.)

As to the substance of the doctors' opinions, their conclusions were based largely on how they believed defendant's mental health issues affected him on the date of the shooting.  Most tellingly, when Dr. Zimmerman was asked how defendant's mental health issues would have worked, he stated his belief that after defendant finished shooting his wife, it relieved the tension of his psychosis and his clarity returned.  True, Dr. Zimmerman diagnosed defendant with "Schizophrenia, Continuous," recorded defendant's test scores "highest on the Paranoia and Schizophrenic Scales," and noted reports that defendant heard voices with or without medication and had thoughts of suicide.  Dr. Della Porta similarly recorded his observations of defendant's tangential thoughts and reports of voices.  However, the doctors issued their reports 19–20 months prior to trial, and neither were requested to or opined on defendant's competency to stand trial.  Dr. Zimmerman also noted that defendant's schizophrenia had "periods of alleviation."  The doctors' opinions that defendant suffered from serious mental health issues, without more to connect these issues to defendant's inability to understand the trial proceedings or assist counsel with his defense, do not call into question defendant's competence at trial.  (*Ramos, supra*, 34 Cal.4th at p. 508; *Rogers, supra*, 39 Cal.4th at p. 847.)

---

**2**     Insanity under *M'Naghten's Case* (1843) 8 Eng.Rep. 718, 722 concerns whether the "defendant was unable either to understand the nature and quality of the criminal act, or to distinguish right from wrong when the act was committed." (*People v. Powell* (2018) 5 Cal.5th 921, 955, fn. omitted; see § 25, subd. (b).)

Defendant also cites his refusal to attend court on September 15, 2021, and his disheveled appearance during the proceedings, to argue he was actively psychotic throughout the proceedings. Even in concert with the doctors' opinions, these facts do not convince the court that the trial court abused its discretion in failing to find substantial evidence of his incompetency. (*Woodruff, supra*, 5 Cal.5th at p. 721.) Such actions, whether categorized as "bizarre, paranoid behavior," an unwillingness to attend court, or evidence of his "preexisting psychiatric condition," have "little bearing on the question of whether the defendant can assist his defense counsel." (*Ramos, supra*, 34 Cal.4th at p. 508; see *Bloom, supra*, 12 Cal.5th at p. 1035.) Defendant argues each of these facts *could* have indicated that defendant was unable to assist counsel or understand the proceedings. Defendant's arguments are speculative. (See *People v. Waidla* (2000) 22 Cal.4th 690, 735 ["'[S]peculation is not evidence, less still substantial evidence.'"].) Neither defendant nor his counsel indicated any difficulties assisting with the defense or understanding the proceedings and, as the People point out, defendant's on-the-record responses to the trial court's questions and statements over a two-year period were intelligible and did not indicate lack of competency. Simply, there is even less in the record here than in *Ghobrial*, *Bloom*, and *Welch* to call into question defendant's competence to stand trial. (See *Ghobrial, supra*, 5 Cal.5th at p. 270 [reminding that "the evidence must bear on the defendant's competency to stand trial, rather than simply establish the existence of a mental illness that could conceivably affect [the defendant's] ability to understand the proceedings or assist counsel"].)

In sum, none of the evidence highlighted by defendant, either singularly or in combination, raises an inference of defendant's inability to understand the proceedings or assist his counsel with his defense such that the trial court should have doubted defendant's competence and made further inquiry. (*Drope, supra*, 420 U.S. at pp. 174–175.) The trial court did not abuse its discretion in failing to order a competency hearing

sua sponte, and the court finds no doubt as a matter of law as to defendant's competence to stand trial based on the record before us.  (*Woodruff, supra*, 5 Cal.5th at p. 721.)

## **DISPOSITION**

The judgment is affirmed.


MEEHAN, J.

WE CONCUR:


LEVY, Acting P. J.


DeSANTOS, J.